IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN SAIGER, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | Case No. 13 C 5590 |
| CITY OF CHICAGO and EDDIE CHAPMAN, | ) ) ) ) | |
| Defendants. | ) | |

**CORRECTED**
<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

John Saiger has sued the City of Chicago and Chicago police officer Eddie Chapman, asserting claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause and the Due Process Clause, and under state law for violation of the Illinois Sex Offender Registration Act, 730 ILCS 150/3. The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Chapman also argues that he is entitled to qualified immunity. For the reasons stated below, the Court dismisses Saiger's federal claims against Chapman based on qualified immunity and also dismisses Saiger's equal protection claim against the City but otherwise denies defendants' motion to dismiss.

## Background

The Illinois Sex Offender Registration Act (SORA) requires convicted sex offenders to register with law enforcement authorities, providing, among other information, their current residence address. 730 ILCS 150/3(a). The registration must

be made with the chief of police of the "municipality in which he or she resides or is temporarily domiciled for a period of time of 3 or more days," except if the municipality is Chicago, in which case the registration must be made at Chicago Police Department headquarters. 730 ILCS 150/3(a)(1). The statute differentiates between sex offenders who have a fixed residence and those who do not. A sex offender without a fixed residence must report weekly to police headquarters and identify all locations where he or she stayed during the previous seven days. 730 ILCS 150/3(a)(2)(ii). A sex offender who fails to register as required commits a felony and is subject to mandatory incarceration and a mandatory fine, among other penalties. 730 ILCS 150/10(a).

Saiger is a convicted sex offender who arrived in Chicago following his release from prison in August 2012. Shortly thereafter, he attempted to meet his SORA obligations by registering with the Chicago Police Department. At the time, Saiger was homeless. He alleges that Chicago police officer Eddie Chapman enforced a City of Chicago policy to deny registration to sex offenders who lack a fixed place of abode. Chapman allegedly recorded Saiger's attempt to register with the notation "bad add[ress]" and instructed him to secure a state identification card displaying a SORA-complaint address. Saiger was not able to secure housing and did not register.

In March 2013, Saiger was arrested for violating SORA. As of January 2014, he remained in the custody of the Cook County Department of Corrections, charged with two counts under SORA related to his failure to register.

Saiger alleges that it is the policy and practice of the City of Chicago to deny homeless sex offenders the opportunity to register under SORA. According to Saiger, the City requires persons without a fixed abode to secure accommodations in a shelter

2

and obtain a state identification card with the address of the shelter before permitting such persons to register. Unless the homeless person presents state identification with a valid shelter address, Saiger maintains, the City prohibits him from registering and thus subjects him to immediate arrest and prosecution.

## Discussion

Defendants contend that Saiger has failed to state a claim upon which relief may be granted. A complaint must contain a "short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The plaintiff may not rely simply on labels, conclusions, or a formulaic recitation of the elements of a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the plaintiff must state a claim for relief that is plausible on its face, "by providing allegations that raise a right to relief above the speculative level." *Indep. Trust Corp. v. Stewart Serv. Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012) (internal quotation marks omitted).

**1. Equal protection claim**

Saiger alleges that the defendants violated his right to equal protection by distinguishing between homeless and non-homeless sex offenders. Specifically, Saiger contends that the defendants imposed an additional hardship on those sex offenders who lack a fixed residence by denying them the ability to register.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to persons within its jurisdiction the equal protection of its laws. U.S. Const. amend. XIV. Equal protection violations may arise in a variety of situations. When the government draws a distinction based on an individual's membership in a suspect class or infringes on a fundamental right, its justification for the distinction must satisfy the

"strict scrutiny" test to avoid offending the constitution.  *See, e.g., Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).  In this case, Saiger does not allege membership in a suspect class, nor does he contend that the defendants' actions implicated a fundamental right.  In these circumstances, the challenged classification is reviewed under the "rational basis" test.  This requires him to show that (1) the defendants treated him differently from other similarly situated individuals; (2) because of his status as a homeless sex offender; and (3) this differential treatment was not rationally related to a legitimate government interest.  *See id.*

Saiger's equal protection claim founders on the first part of this test.  The "similarly situated" analysis does not rely on a "precise formula," but "what is clear is that similarly situated individuals must be very similar indeed." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (internal quotation marks omitted). A plaintiff and his comparators must be directly comparable in all material respects. *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005).  Though the question of whether a comparator is similarly situated is usually reserved for the finder of fact, when the plaintiff fails to allege facts tending to show the two groups are similarly situated, then dismissal under Rule 12(b)(6) is appropriate. *LaBella Winnetka*, 628 F.3d at 942.

Saiger identifies non-homeless sex offenders as the group of persons whom he contends are similarly situated to homeless sex offenders like himself.[1]  *See* Am.

---

[1] In his response to the motion to dismiss, Saiger puts it differently, saying that the defendants distinguish between those homeless sex offenders who have been able to locate overnight shelter and those who have not.  This is only a semantic difference from the homeless / non-homeless distinction referenced in his complaint, and it does not change the Court's analysis.

Compl. ¶ 12. There are, however, obvious and significant differences between these two groups. Homeless persons are, by definition, are transient and lack a place of permanent accommodation; non-homeless persons have a fixed place of abode. This difference is material when considering a statutory scheme like SORA, which exists "to track the whereabouts of convicted sex offenders." *People v. Wlecke*, 2014 IL App (1st) 112467 at ¶38, 2014 WL 585963 (2014).

In sum, the Court concludes that Saiger has failed to state a viable equal protection claim.

**2.      Due process claim**

Saiger also asserts that the defendants violated his procedural and substantive due process rights. The Court assesses a procedural due process claim using a two-part analysis. First, the Court must determine whether the plaintiff was deprived of a constitutionally protected liberty or property interest. If so, the Court assesses how much process was due. *Leavell v. Ill. Dep't of Natural Res.,* 600 F.3d 798, 804 (7th Cir. 2010). Defendants have not argued the absence of a constitutionally protected property or liberty interest, so the Court need not address that point.

Turning to the second step in the analysis, defendants argue that the availability of pre-deprivation relief through filing a state court petition for a writ of *certiorari* and post-deprivation relief via a probable cause hearing, bail hearing, or trial in a criminal prosecution satisfy the requirements of procedural due process. In determining what process is due in a particular situation, a court considers: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value of any alternative procedural

5

safeguards; and (3) the government's interest, including the function involved and additional administrative or fiscal burdens that alternate procedural requirements would require. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Schepers v. Comm'r, Ind. Dept. of Corr.*, 691 F.3d 909, 915 (7th Cir. 2012).

A homeless sex offender has a significant interest in registering. The law requires a sex offender to register in a given municipality once he has resided in the municipality for three days. *See* 730 ILCS 150/3(a). If the offender fails to do, he has committed a crime and is therefore subject to arrest. Thus the City's alleged refusal to register homeless persons jeopardizes such persons' interest in freedom from arrest and confinement, which is a significant interest. *See Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006) ("The interest in liberty is a weighty one . . . ."); c*f. Wilkinson v. Austin*, 545 U.S. 209, 225 (2005) (examining the first factor under *Mathews* and indicating that members of the public have a greater interest than prison inmates in freedom from confinement).

Second, existing procedures for challenging the deprivation are arguably non-existent, or virtually so. Neither SORA nor the City offers any sort of opportunity, administrative or otherwise, to challenge a refusal to register a sex offender. From a due process standpoint, this is problematic. *See Wilkinson*, 545 U.S. at 226 (noting that "a fair opportunity for rebuttal" is "among the most important procedural mechanisms for purposes of avoiding erroneous deprivations").

Defendants say that Saiger or any other homeless sex offender can challenge a refusal to register him by suing in court, via a common law writ of *certiorari*. At the present stage of the case, the Court cannot say, as a matter of law, that this is sufficient

to satisfy due process. First, defendants offer no basis to conclude that this should be considered a *pre*-deprivation remedy. Specifically, on the present record, one cannot say that a homeless person, who is, almost by definition, impecunious and lacking in access to social and community resources, has a ghost of a chance of being able to file a lawsuit and get a hearing before he is subject to arrest for failure to register. Second, the same considerations of impecuniousness and lack of access to resources arguably render the ability to file a state court lawsuit an inadequate post-deprivation remedy as well—assuming that this is the sort of situation where a post-deprivation remedy can satisfy due process.

Defendants also contend that Saiger has an adequate post-deprivation remedy because, if arrested, he can challenge the defendants' refusal to register him during ongoing criminal proceedings. The Seventh Circuit, however, rejected a similar argument in the context of correcting errors to Indiana's sex offender registry. *Schepers v. Comm'r, Ind. Dept. of Corr.*, 691 F.3d 909 (7th Cir. 2012). That case concerned erroneous listings of persons in the state's sex offender registry and the absence of a process for challenging the listing. A person listed in the registry was subject to additional requirements and prohibitions, the violation of which could subject him to prosecution. In assessing what process was due, the court noted that some registrants "can, and have, challenged registry errors in the course of criminal prosecutions for failure to comply with registration requirements." The court concluded, however, that "due process does not require a person to risk additional criminal conviction as the price of correcting an erroneous listing, especially where a simple procedural fix is available much earlier." *Id.* at 916. The same would appear to be true here.

In any event, there is significant doubt that a post-deprivation remedy would be adequate in the present situation. The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The exceptions to this typically involve situations involving "'the necessity of quick action by the State or the impracticality of providing any predeprivation process,'" *id.* at 128 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)) or "'where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the [post-deprivation] procedures . . . are sufficiently reliable to minimize the risk of erroneous determination.'" *Id.* (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978)). Defendants have not established at this point that this is that sort of situation.[2]

When a deprivation is the result of a random and unauthorized act by a government actor, then post-deprivation relief is sufficient. *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (negligent deprivation); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation). This is so irrespective of whether a property or liberty interest is at stake. *Zinermon v. Burch*, 494 U.S. 113, 131 (1990). If, however, the state system itself destroys the protected interest, then the sorts of post-deprivation remedies that are considered adequate for random and unauthorized acts are insufficient. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982). In this case, Saiger alleges that it

---

[2] The risk of wrongful deprivation of one's personal liberty is a more significant interest than the risk of wrongful deprivation of one's automobile, which is why *Hudson v. City of Chicago*, 29 F.3d 1145 (7th Cir. 1994), which discussed the possibility of a post-deprivation writ of *certiorari* challenging the towing of a vehicle, does not control the outcome here.

was an established procedure of the City to deny homeless sex offenders the opportunity to register. Given this allegation, which is made sufficiently for the Court to accept it as true for purposes of the present motion, *Parratt* and *Hudson* do not control this case.

Turning to the third *Mathews* factor, the City has, of course, an interest in ensuring timely and cost-effective registration of sex offenders. Defendants argue that a pre-deprivation administrative remedy for homeless sex offenders denied the opportunity to register is not feasible. But in the present procedural context—a Rule 12(b)(6) motion to dismiss—the Court cannot say that defendants have shown, as a matter of law, the infeasibility or impracticality of a pre-deprivation (or even a quick post-deprivation) administrative remedy. That is particularly so given the significant weight one must afford to a homeless interest in being free from improper arrest.

In sum, the Court concludes that Saiger has stated a facially viable procedural due process claim. Thus the Court need not address at this time whether he can maintain a substantive due process claim.

**3.     State law claim**

Having denied in part the defendants' motion to dismiss, the Court exercises supplemental jurisdiction over Saiger's state law claim because the claim is part of the same case or controversy as his federal claim. 28 U.S.C. § 1367; *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

**4.     Qualified immunity**

Defendant Chapman also seeks dismissal of Saiger's section 1983 claim for damages against him based on the defense of qualified immunity. Qualified immunity

9

shields a government official from liability for damages under 42 U.S.C. § 1983 if his actions reasonably could have been thought to be consistent with the rights he is alleged to have violated. *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005).

Qualified immunity requires a court to assess 'the objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It involves a two-part test. The first question is whether the facts, taken in the light most favorable to the plaintiff, show the defendant's conduct violated a constitutional right. The second question is whether the right was clearly established at the time of the official's conduct, in this case August 2012. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). On the latter question, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.* at 202. A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leaf*, 400 F.3d at 1080 (internal quotation marks omitted).

The Court begins with the second of these questions, because in this case, doing so conserves judicial resources. *See Findlay v. Ledermon*, 722 F.3d 895, 899 (7th Cir. 2013). Saiger may show that the right was clearly established by identifying a 'closely analogous case" that recognizes the right in question or by showing that the defendant's conduct was so egregious that as an objective matter, Chapman would have been on notice that he was violating the constitution. *See, e.g., Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001) ("qualified immunity is dissolved . . . when the conduct is so egregious that no reasonable person could have believed that it would not violate

clearly established rights.").

Saiger attempts to overcome qualified immunity by offering what he contends is an analogous case. Specifically, he points to the Illinois Supreme Court's decision *People v. Molnar*, 222 Ill. 2d 495, 857 N.E.2d 209 (2006). Putting aside whether a state supreme court case would suffice, *Molnar* does not help Saiger. The decision did not address the constitutionality of declining registration but rather concerned whether SORA was unconstitutionally vague in certain respects.

Because Saiger has not identified any basis for the proposition that the constitutional right at issue was clearly established that the relevant time, the Court concludes that Chapman is entitled to qualified immunity from liability for damages under section 1983.

**Conclusion**

For the reasons stated above, the Court dismisses plaintiff's equal protection claim; dismisses all of plaintiff's claims under 42 U.S.C. § 1983 against defendant Chapman based on qualified immunity; and otherwise denies defendants' motion to dismiss. Defendants are directed to answer the remaining claims by no later than May 12, 2014. Both sides are directed to make Rule 26(a)(1) disclosures by that same date. The case is set for a status hearing on May 19, 2014 at 9:30 a.m. for the purpose of setting a discovery and pretrial schedule.

```
_____
       MATTHEW F. KENNELLY
       United States District Judge
```

Date: April 19, 2014